STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

NUMBER
2021 CA 0271

REGENCY INTRASTATE GAS, LLC
VERSUS
LOUISIANA TAX COMMISSION AND
SCOTT MEREDITH, ASSESSOR OF CALDWELL PARISH

consolidated with

2021 CA 0272

REGENCY INTRASTATE GAS, LLC
VERSUS
LOUISIANA TAX COMMISSION AND
ROY ELROD, ASSESSOR OF FRANKLIN PARISH

consolidated with

2021 CA 0273

REGENCY INTRASTATE GAS, LLC
VERSUS
LOUISIANA TAX COMMISSION AND
GLEN KIRKLAND, ASSESSOR OF JACKSON PARISH

Decision Rendered: _____SEP 2 7 2021_____

* * * * * * *

APPEALED FROM THE
19th JUDICIAL DISTRICT COURT, SECTION 24
EAST BATON ROUGE PARISH, LOUISIANA
DOCKET NUMBERS 687,353; 687,354; 687,355

HONORABLE DONALD JOHNSON, JUDGE

* * * * * * *

| | |
|---|---|
| Angela W. Adolph<br>Baton Rouge, Louisiana | Attorney for Plaintiff/Appellant<br>Regency Intrastate Gas, LLC |
| Brian A. Eddington<br>Baton Rouge, Louisiana | Attorney for Defendant/Appellees<br>Scott Meredith, Caldwell Parish<br>Assessor; Rod Elrod, Franklin Parish<br>Assessor; and Glen Kirkland, Jackson<br>Parish Assessor |
| Robert D. Hoffman, Jr.<br>Drew Hoffman<br>Baton Rouge, Louisiana | Attorneys for Louisiana Tax Commission |

BEFORE: McDONALD, THERIOT, AND HESTER, JJ.

**McDONALD, J.**

In these consolidated cases, a taxpayer challenges the Louisiana Tax Commission's denial of the taxpayer's request for a reduction in the fair market value of the taxpayer's pipeline property for tax year 2018 based on economic obsolescence. The taxpayer appeals two district court judgments, which affirmed three Louisiana Tax Commission decisions, which in turn affirmed three parish Board of Review decisions, which in turn upheld the correctness of ad valorem property tax assessments by three parish assessors. After review, we affirm one judgment, and affirm in part and vacate in part a second judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Regency Intrastate Gas, LLC (RIG) owned pipeline property that traversed Caldwell, Franklin, and Jackson Parishes. When RIG filed its 2018 property tax returns in these three parishes, it requested a 31.04% reduction in its pipeline property's fair market value based on economic obsolescence. Caldwell Parish Assessor Scott Meredith, Franklin Parish Assessor Rod Elrod, and Jackson Parish Assessor Glen Kirkland (the Assessors) each denied RIG's obsolescence reduction request.[1] The Caldwell, Franklin, and Jackson Parish Boards of Review (Boards of Review)[2] each rejected RIG's challenge to the assessments. RIG then appealed to the Louisiana Tax Commission (LTC). After a hearing where the parties presented documentary evidence and live testimony, the LTC issued three decisions affirming the Boards of Review decisions upholding the Parish Assessors' 2018 assessments.

On September 3, 2019, RIG filed three petitions for judicial review of LTC's decisions in the district court, naming the LTC and the Assessors as defendants/appellees. The petitions were assigned Docket Number 687,353 (Caldwell suit); Docket Number 687,354 (Franklin suit); and, Docket Number 687,355 (Jackson suit). The Assessors filed

---

[1] The Louisiana Tax Commission decisions note that the Caldwell Assessor applied a ~3.97% reduction for obsolescence to RIG's Canehill compressor station but applied no reduction for RIG's Caldwell Parish-sited pipeline.

[2] The record shows the Caldwell, Franklin, and Jackson Parish Police Juries act as their respective parishes' Boards of Review when a taxpayer protests the Parish Assessors' property assessments. *See* La. R.S. 47:1931; 47:1992(B), (C), and (D); *accord TBM-WC Sabine, LLC v. Sabine Parish Board of Review,* 17-1189 (La. App. 3 Cir. 7/18/18), 250 So.3d 1075, 1077, n.2.

2

an unopposed motion to transfer and consolidate the proceedings, which the district court granted. The administrative record was filed into the consolidated district court record, the parties filed briefs, and the district court held a review hearing.

On October 20, 2020, the district court signed a judgment in favor of the LTC, captioned with only the Caldwell suit docket number, against the "petitioner," denying and dismissing the petition for judicial review (October judgment). The October judgment pertinently stated:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Court finds in favor of the appellee/respondent, Louisiana Tax Commission, and against the petitioner. As such, the Petition for Judicial Review is **DENIED.** The court finds that the Commission's decision was neither arbitrary nor capricious.
>
> **IT IS FURTHER ORDERED** that the Petition for Judicial Review is hereby **DISMISSED**, at Petitioner's costs.

The district court granted RIG's motion for appeal from the October judgment, and signed the order of appeal without the necessity for posting bond on November 20, 2020.

On December 4, 2020, the district court signed a second "amended and restated" judgment in favor of the LTC, captioned with the Caldwell, Franklin, and Jackson suit docket numbers, adding that the judgment was also in favor of the Assessors, specifically against RIG as the petitioner, and denying and dismissing RIG's petitions for judicial review (December judgment). The December judgment pertinently stated:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Court finds in favor of Appellees/Respondents, Caldwell Parish Assessor Scott Meredith, Franklin Parish Assessor Rod Elrod, Jackson Parish Assessor Glen Kirkland, and the Louisiana Tax Commission, and against the Appellant/Petitioner, Regency Intrastate Gas, LLC. As such, the Petitions for Judicial Review are **DENIED.** The Court finds the Louisiana Tax Commission's decisions were neither arbitrary nor capricious.
>
> **IT IS FURTHER ORDERED** that the Petitions for [Judicial] Review are hereby **DISMISSED**, at Petitioner's costs.

RIG also appealed from the December judgment, and the district court granted the second appeal.

3

## APPELLATE JURISDICTION

Louisiana Constitution article VII, §18(E) provides that the correctness of assessments by the assessor shall be subject to review first by the parish governing authority, then by the LTC or its successor, and finally by the courts, all in accordance with procedures established by law. *See* La. R.S. 47:1931; 47:1992; 47:1989; 47:1998. Louisiana Revised Statutes 47:1998 authorizes judicial review of the correctness of a tax assessment, and the Administrative Procedure Act, specifically La. R.S. 49:964(F) and (G), govern the extent of that review. La. R.S. 49:967(A); *D90 Energy, LLC v. Jefferson Davis Parish Bd. of Review,* 20-00200 (La. 10/20/20), ___ So.3d ___, ___, 2020 WL 6145158, *5. When reviewing a final decision of an agency, the district court functions as an appellate court. *Blue Cube Operations, LLC v. Assumption Parish Bd. of Review,* 20-0157 (La. App. 1 Cir. 11/6/20), 315 So.3d 887, 890. An aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. La. R.S. 49:965.

Although the district court functions as an appellate court in reviewing tax assessments, certain procedural rules applicable to a district court sitting in its original capacity also apply to a district court when it functions in an appellate capacity under La. R.S. 49:965. *E.g., see Bennett v. Louisiana Department of Insurance,* 20-0666 (La. App. 1 Cir. 5/12/21), 2021 WL 1904583, *2, n.1 (noting the First Circuit has consistently defined a final judgment under La. R.S. 49:965 according to Book II of the Louisiana Code of Civil Procedure); *Perdido Energy La., LLC v. Acadia Parish Bd. of Review,* 20-0962 (La. App. 1 Cir. 3/30/21), 2021 WL 1207818, *2 (converting an appeal from an interlocutory judgment rendered under La. R.S. 49:965 to an application for supervisory writs). Generally, the district court's jurisdiction over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond. La. C.C.P. art. 2088(A).[3] Any judgment rendered after the order granting the appeal is null if that judgment purports to address a matter

---

[3] Although the legislature recently amended La. C.C.P. art. 2088, the amendment does not apply herein. *See* 2021 La. Sess. Law Serv. Act 259, §2.

4

which is at that time reviewable under the appeal. *Hernandez v. Excel Contractors, Inc.,* 18-1091 (La. App. 1 Cir. 3/13/19), 275 So.3d 278, 283.

In this case, the district court rendered the October judgment in favor of only the LTC and only in the Caldwell suit. Under La. C.C.P. art. 2088(A), after signing the order of appeal from the October judgment, the district court was divested of jurisdiction over the matter as it pertained to the LTC in the Caldwell suit. But, after signing the order of appeal from the October judgment, the district court thereafter rendered the December judgment purportedly in favor of the LTC *and* all three Assessors, *and* in the Caldwell, Franklin, *and* Jackson suits. As to the LTC in the Caldwell suit, the district court had no jurisdiction to render the December judgment. Thus, to the extent the December judgment purports to again rule in favor of the LTC in the Caldwell suit, it is null as it purports to address a matter already reviewable under the appeal of the October judgment. *See Hernandez,* 275 So.3d at 285 (nullifying a district court order purporting to dismiss claims under review in a then-pending appeal).

However, as to the Caldwell Assessor in the Caldwell suit, the district court retained jurisdiction to render the December judgment, because that matter was not reviewable under the appeal of the October judgment. *See Damond v. Marullo,* 19-0675 (La. App. 1 Cir. 6/22/20), 307 So.3d 234, 239, *writ denied,* 20-01243 (La. 3/23/21), 312 So.3d 1104 (noting the district court retained jurisdiction over claims against one defendant after an appeal was granted from a judgment ruling on claims against other defendants).

Similarly, as to the LTC in the Franklin and Jackson suits, and as to the Caldwell, Franklin, and Jackson Assessors in those suits, the district court retained jurisdiction to render the December judgment, because these matters were not reviewable under the appeal of the October judgment. Accordingly, we conclude the October judgment is properly before us as to the LTC in the Caldwell suit.[4] The December judgment is properly before us as to: (1) the Caldwell Assessor in the Caldwell suit; (2) the LTC and the

---

[4] The October judgment is a partial final judgment immediately appealable under La. C.C.P. art. 1915(A)(1), because it dismissed a party (the LTC) from the principal demand in the Caldwell suit and resolved all issues between RIG and the LTC in that suit. *Herrera v. First National Insurance Company of America,* 15-1097 (La. App. 1 Cir. 6/3/16), 194 So.3d 807, 811. The October judgment's failure to identify RIG as the "petitioner" against whom it is rendered is not fatal to the judgment's certainty, because RIG is easily identifiable as the sole petitioner in the Caldwell suit. *Accord Micken v. DHC OPCO-Napoleonville, LLC,* 18-0140 (La. App. 1 Cir. 11/2/18), 2018 WL 5732482 *2.

5

Franklin Assessor in the Franklin suit; and, (3) the LTC and the Jackson Assessor in the Jackson suit. Concomitantly, we vacate the December judgment insofar as it purports to rule in favor of the LTC in the Caldwell suit. We now address the merits of RIG's appeals.

**STANDARD OF REVIEW**

On review of a district court judgment rendered under La. R.S. 49:965, the appellate court owes no deference to the district court's factual findings or legal conclusions. *Blue Cube Operations, LLC,* 315 So.3d at 890. Rather, the appellate court conducts its own independent review of the administrative record and reviews the administrative agency's decision and findings using the standards found in La. R.S. 49:964(G). *Id.* Thus, we may affirm or remand the agency decision for further proceedings. We may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusion, or decisions are: in violation of constitutional or statutory provisions; in excess of the agency's statutory authority; made upon unlawful procedure; affected by other error of law; arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion; or, not supported by a preponderance of the evidence. La. R.S. 49:964(G)(1)-(6). This court shall make its own factual determinations by a preponderance of the evidence based on its own evaluation of the record reviewed in its entirety upon judicial review. La. R.S. 49:964(G)(6). In conducting this review, however, this court affords considerable weight to an administrative agency's construction and interpretation of its rules and regulations, and the agency's construction and interpretation should control unless found to be arbitrary, capricious, or manifestly contrary to its rules and regulations. *D90 Energy, LLC,* ___ So.3d at ___; 2020 WL 6145158 at *5. Further, this court shall give due regard to the administrative agency's determinations regarding witness credibility, where the agency had first-hand observation of a witness's credibility on the witness stand. La. R.S. 49:964(G)(6).

Each assessor is charged with the responsibility of determining the fair market value of all property subject to taxation within his parish or district at intervals of not more than four years. Fair market value is determined in accordance with criteria established by law and applied uniformly throughout the state. La. Const. art. VII, §18(D). Fair market value is the price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all uses and purposes to which the property is best adapted and for which it can be legally used. La. R.S. 47:2321; LAC 61:V.109. To ensure uniformity, the LTC has adopted guidelines, procedures, rules, and regulations, which each assessor shall follow in determining fair market value. La. R.S. 47:2323(A) and (B). Louisiana Administrative Code Title 61, Pt. V, Chapter 13 contains the "Guidelines for Ascertaining the Fair Market Value of Pipelines." LAC 61:V.1301. Here, the parties do not dispute that the subject pipeline property is valued using a cost approach based on schedules found in LAC 61:V.1307. *See* LAC 61:V.1301(A). In using the cost approach, the assessor values the property by estimating the replacement or reproduction cost of the improvements and then deducting the estimated depreciation. La. R.S. 47:2323(C)(2); LAC 61:V.1301(A)(2). The assessor shall also consider functional and/or economic obsolescence in the fair market value analysis, as substantiated by the taxpayer in writing. LAC 61:V.1301(A)(2); LAC 61:V.1305(F).

Although La. R.S. 47:2324 requires the assessor to gather all data necessary to properly determine fair market value of property in his jurisdiction, it is the party seeking a fair market value reduction for its pipeline property based on obsolescence who has the burden of producing sufficient data and information to substantiate its claim. *TBM-WC Sabine, LLC v. Sabine Parish Bd. of Review,* 17-1189 (La. App. 3 Cir. 7/18/18), 250 So.3d 1075, 1079. Consistent with La. R.S. 47:1957, the assessor may request additional

---

[5] Although the legislature recently amended several statutory provisions relevant to ad valorem taxation, those amendments do not apply herein. *See* 2021 La. Sess. Law Serv. Act 343, §3, approved June 15, 2021.

7

documentation. LAC 61:V.1301(A)(2).

The dispute in this case involves the Assessors' rejection of RIG's request for a 31.04% reduction in its pipeline property's fair market value based on economic obsolescence. In support of its request, RIG provided the Assessors with three documents: RIGS Haynesville Partnership Co. 2017 financial statements (2017 Financial Statements); an October 2017 Impairment Analysis performed by Pricewaterhouse Coopers LLP for RIGS Haynesville Partnership Co. (Impairment Analysis); and, an April 2018 sale agreement whereby two partners, Alinda Gas Pipeline I, LP, and Alinda Gas Pipeline II, LP, (Alinda I and II) sold their interest in RIGS Haynesville Partnership Co. for $25 million to a third partner, Regency Haynesville Intrastate Gas LLC (April 2018 partnership interest sale).[6] At the LTC hearing, the Assessors all testified that they received and reviewed RIG's evidence but considered it insufficient to warrant the reduction for the 2018 tax year; they also presented the testimony of a property tax appraisal witness, Rodney Kret. RIG presented the testimony of Mike Smith, its tax representative, and of Brian Riley, a corporate official involved in RIG's Texas and Louisiana operations.[7]

On appeal to this court, RIG contends the LTC's decision was arbitrary and capricious, because the LTC disregarded "competent evidence" showing that RIG's 2018 valuation of its pipeline property, including the 31.04% fair market value reduction, was proper. RIG argues that the best evidence of the fair market value of any property is the purchase price paid in a recent sale, and the 2018 purchase price of RIG's property in this case showed that its pipeline system's throughput was significantly below capacity, Pricewaterhouse Coopers LLP had written off about two-thirds of the value of RIG's property and doubted RIG's viability as an ongoing concern, and RIG's firm transportation contracts with producers would expire in about two years.

---

[6] Notes to the 2017 Financial Statements indicate that RIG is a wholly-owned subsidiary of RIGS Haynesville Partnership Co., a Delaware partnership, formed in 2009 by Alinda I and II; Regency Haynesville Intrastate Gas LLC, a wholly-owned subsidiary of Regency Gas Services LP; and EFS Haynesville, LLC. Regency Gas Services LP is a wholly-owned subsidiary of Energy Transfer Partners, LP. As of December 31, 2017, RIGS Haynesville Partnership Co. was 50% owned by Alinda I and II, 49.99% owned by Regency Haynesville Intrastate Gas LLC, and 0.01% owned by EFS Haynesville, LLC.

[7] On appeal, the LTC can accept additional evidence. La. R.S. 47:1989; LAC 61:V.3103; *D90 Energy, LLC,* ___ So.3d at ___; 2020 WL 6145158 at *4.

8

In its decisions, the LTC defined economic obsolescence as "a diminution in value or usefulness from economic factors, such as decreased demand or changed governmental regulations." The LTC determined RIG's economic obsolescence request was "almost entirely" based on the book value of the subject pipeline property. The LTC further determined, however, that RIG's reliance on book value as a measure of its pipeline property's fair market value was flawed, explaining:

> Importantly, book value does not equate to fair market value. Indeed, book value is the value at which an asset is carried on a balance sheet, while fair market value is what a willing and informed buyer would pay a willing and informed seller under usual and ordinary circumstances for the asset. [RIG's] representative correctly stated during oral testimony that book value is "… the Taxpayer's viewpoint of what [its] assets are worth." From an appraisal or assessment perspective, there is no relationship between book value, except by coincidence, and fair market value of an individual asset, such as a pipeline system. As such, the [LTC] finds that [RIG's] request for a 31.04% reduction for economic obsolescence based on the book value of the subject pipeline to be unsubstantiated.

The LTC also discounted RIG's alternative arguments that the upcoming expiration of its firm transportation contracts in 2020 and the April 2018 partnership interest sale supported its economic obsolescence request.

After our own evaluation of the record under La. R.S. 49:964(G), we conclude the LTC did not arbitrarily and capriciously disregard RIG's obsolescence evidence. Rather, we agree with the LTC and the Assessors that RIG's data and information was insufficient to warrant the 31.04% reduction for the 2018 tax year. At the LTC hearing, RIG's tax representative, Mike Smith, while admitting the evidence was "hard to follow," earnestly attempted to explain how the Impairment Analysis, which purportedly showed a 31.04% reduction in the value of RIG's assets as of October 2017, justified using RIG's book value to determine the fair market value of its pipeline property for 2018. In contrast, the Assessors' property tax appraisal witness, Rodney Kret, testified that book value rarely equals fair market value, primarily because accountants and appraisers calculate depreciation differently for the two values. Further, Mr. Kret questioned the "independence" of the Impairment Analysis and testified that an "impairment expense [was] not something [he had seen] very often in the … property tax appraisal world." Apparently, the LTC relied upon Mr. Kret's professional opinion as a sound reason for

9

refusing to equate RIG's internal book value with fair market value. We find no basis to reverse this determination. *See* La. R.S. 49:964(G).

Regarding the then upcoming expiration of RIG's firm transportation contracts in 2020, RIG argues that the 2017 Financial Statements project a 50% drop in revenue as soon as the contracts expire. According to RIG, a hypothetical willing buyer in 2018 would have considered the imminent termination of the contracts in assessing the value of RIG's pipeline property, and the LTC ignored this fact in its denial of the economic obsolescence request. At the LTC hearing, at least one LTC Commissioner questioned how future revenue losses projected to occur in 2020 justified an economic obsolescence reduction for the 2018 tax year. Further, the Assessors all generally testified that projected 2020 revenue losses would not impact 2018 property tax assessments. Although RIG argues that the Uniform Standards of Professional Appraisal Practice rules require an assessor to consider future economic conditions, RIG has provided no controlling authority that requires Louisiana assessors or the LTC to follow these uniform standards. Giving considerable weight to the LTC's construction and interpretation of its rules and regulations, we cannot find that the LTC acted arbitrarily, capriciously, or manifestly contrary to its rules, based on the evidence before it, in refusing to consider RIG's future revenue losses in the determination of its pipeline property's 2018 fair market value.

Regarding the April 2018 partnership interest sale, RIG correctly points out that, under LAC 61:V.1305(G), an assessor should consider "properly documented" pipeline sales as fair market value, provided the sale meets all tests relative to it being a valid sale. The LTC determined RIG's evidence was insufficient to prove that a "valid, arms-length sale" of the pipeline property occurred for purposes of determining its fair market value. After our own review of the sale contract, we agree. The April 2018 partnership interest sale is not a pipeline sale at all; rather, it is the sale of a partnership interest in an entity of which RIG apparently is a wholly-owned subsidiary. The sale contract does not clearly indicate exactly what Alinda I and II sold to Regency Haynesville Intrastate Gas LLC for $25 million, and, as relevant herein, does not specifically indicate that RIG's Caldwell, Franklin, and Jackson Parish pipeline property was being sold at a specific value. Although

10

the sale did include the transfer of general partnership units, the sale document does not define that term, but references a separate document not in the appellate record. Without more information, we are unable to determine the value of the "property" sold. Thus, we conclude the sale of an undefined partnership interest does not establish fair market value of pipelines as defined in La. R.S. 47:2321 and LAC 61:V.109. *Contrast D90 Energy, LLC,* ___ So.3d at ___; 2020 WL 6145158 at *1, *6, wherein the taxpayer proved the fair market value of gas and salt water disposal wells with clear, documentary evidence and live testimony establishing a valid, arms-length sale of the wells themselves.

In sum, based on the administrative record, and giving due regard to the LTC's interpretation of its rules and to its witness credibility determinations, we conclude RIG failed to carry its burden of proving entitlement to a fair market value reduction for its pipeline property based on economic obsolescence for the 2018 tax year. *See D90 Energy, LLC,* ___ So.3d at ___; 2020 WL 6145158 at *5; *TBM-WC Sabine, LLC,* 250 So.3d at 1079. We find no basis in La. R.S. 49:964(G) requiring reversal of the LTC's decisions. The LTC's decisions are legally supported by applicable statutory and administrative authority and are factually supported by the record evidence.

## CONCLUSION

We affirm the October 20, 2020 judgment in favor of the Louisiana Tax Commission, and dismissing petitioner Regency Intrastate Gas, LLC's petition for judicial review against the Louisiana Tax Commission, in 19th Judicial District Court Number 687,353.

We affirm the December 4, 2020 judgment insofar as it ruled in favor of Caldwell Parish Assessor Scott Meredith, and dismissed Regency Intrastate Gas, LLC's petition for judicial review against Caldwell Parish Assessor Scott Meredith, in 19th Judicial District Court Number 687,353.

We also affirm the December 4, 2020 judgment insofar as it ruled in favor of the Louisiana Tax Commission, Franklin Parish Assessor Rod Elrod, and Jackson Parish Assessor Glen Kirkland, and dismissed Regency Intrastate Gas, LLC's petitions for judicial review in 19th Judicial District Court Numbers 687,354 and 687,355.

11

We vacate the December 4, 2020 judgment insofar as it purported to rule in favor of the Louisiana Tax Commission in 19th Judicial District Court Numbers 687,353.

We assess appeal costs to Regency Intrastate Gas, LLC.

**OCTOBER 20, 2020 JUDGMENT AFFIRMED; DECEMBER 4, 2020 JUDGMENT AFFIRMED IN PART AND VACATED IN PART.**